UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:

Lonnie L. and Delores J. Lundstrom                    Bankruptcy No. 08-30589
                                                      Chapter 7
                Debtors.
_____/

Michael L. Wagner, Trustee of the Lonnie
and Delores Lundstrom Bankr. Estate,

                Plaintiff,

        vs.                                           Adversary No. 08-7028

Lonnie and Delores Lundstrom,

                Defendants.
_____/

**MEMORANDUM AND ORDER**

By complaint filed September 8, 2008, Michael L. Wagner, the bankruptcy trustee in this case, initiated this adversary proceeding seeking a determination that Debtors Lonnie L. Lundstrom and Delores J. Lundstrom are not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2) and (4). The Debtors filed an answer on September 24, 2008, denying the allegations.

The matter was tried on December 17, 2008. From the evidence presented, the following constitutes the Court's findings of fact and conclusions of law.

I.  FINDINGS OF FACT

On June 12, 2008, Debtors filed a voluntary chapter 7 bankruptcy petition. On Debtors' Schedule C, they claimed the real property at issue as exempt as their homestead pursuant to N.D.C.C. §§ 47-18-01 and 28-22-02. They listed the value of the property at $80,000 and the value

of the claimed exemption at $63,265.27. They exempted their mobile home under N.D.C.C. § 28-22-02(10). They did not list any horses as exempt, nor did they disclose ownership of any horses on Schedule B. On Schedule D, Debtors listed the amount of the secured claim on their real property owed to Starion Financial as $16,734.73.

The meeting of creditors was held on July 10, 2008. At the meeting, the trustee asked Debtor Lonnie Lundstrom whether he had tried to sell the homestead property.[1] Lonnie Lundstrom responded that he was not interested in selling it, and that he had laughed at an acquaintance's offer to buy the property for $750/acre[2] over coffee one day. He also told the trustee that he reviewed the bankruptcy petition and everything was true and correct.

On July 24, 2008, Debtors filed an Amended Schedule B disclosing 15 horses valued at $200 each. Debtors also filed an Amended Statement of Financial Affairs, listing horses owned by others but held by Debtors on their property. These included one mare and one yearling held for Tim Hoffman and 25 mares and one stallion held for Randy Schmidt.

The trustee filed an objection to the value Debtors placed on their homestead exemption on August 8, 2008. Debtors responded to the trustee's objection on August 28, 2008.

On September 23, 2008, Debtors filed amended schedules listing the value of the real property at $105,000, and the value of the claimed exemption at $80,000. They also amended the value of the horses to $35 each and added the horses to their claimed exemptions. Debtors also filed an Amended Schedule D, listing two separate amounts owed to Starion Financial: $16,457 for the purchase of the homestead and $3,120 for a "May 15, 2008 extension of original loan amt- $3,000

---

[1] Debtor Lonnie Lundstrom testified to this at the hearing on this matter.

[2] This offer would total $120,000 for the entire property.

plus $120 interest." On the same date, Debtors filed a motion to substitute their original attorney with the attorney presently representing Debtors.

The trustee withdrew his objection to the valuation of Debtors' homestead property on September 30, 2008, and he filed the objection to Debtors' exemptions presently before the Court on October 23, 2008.

At the hearing on the matter, Vincent Bitz, a real estate broker and auctioneer, testified that there would be "no problem" getting $120,000 for the property. Further, he would personally speculate on the property if it were available for that price.[3] He testified that it might be possible to sell the land for more than that, and that if he owned the property and were selling it, he would try to get between $140,000 and $150,000 for it. Bitz is not a licensed appraiser and did not provide a written appraisal on the property.

Wade Bachmeier, another real estate broker, also testified. Bachmeier sold Debtors 40 acres of the land at issue and signed a guaranty for Debtors' loan from Starion Financial. Bachmeier valued the land at $105,000 based on several factors including comparable land sales, accessibility, and productivity.

Debtor Lonnie Lundstrom testified that at the meeting of creditors, he told the trustee that he had laughed at his acquaintance's offer to buy the land for $750/acre not because of the price offered, but because he is not interested in selling the land regardless of the offer. He testified that the land is his home, and he has nowhere else to go. Lonnie Lundstrom testified that he used to have

---

[3] Debtors stipulated at the hearing on the matter that the land is worth $750/acre or $120,000 total.

a drinking problem, and the land is his therapy. If not for the land, he said, he would go back to drinking.

Lonnie Lundstrom also testified that they currently own 15 horses, and they owned 15 horses on the day they filed for bankruptcy. When they filed, there were other horses on his property, but Debtors did not own them. He testified that Debtors' horses are worth nothing, and that people had to pay out of pocket to dispose of horses at a recent sale. When he was asked why the horses were not listed in the original bankruptcy schedules, he testified that his attorney at the time knew they had horses and that the omission must have been an oversight on the attorney's part. When asked why he signed the petition if the horses were not listed, he stated that he had been out working in the rain, and he was cold, wet and hungry. He did not read the petition and instead relied on his attorney to have correctly prepared it.

In an unrelated state court action, Debtors filed a claim of exemption on December 20, 2007, listing horses valued at $2,500. Lonnie Lundstrom testified that his previous attorney filled this out and provided the value for the horses. Lonnie Lundstrom stated he did not tell the attorney that the horses were worth $2,500, and he does not know how the attorney arrived at this value.

Debtors listed 15 horses on Amended Schedule B filed on July 24, 2008, as worth $200 each, and in another Amended Schedule B filed on September 23, 2008 as worth only $35 each. When asked why the horses decreased in value between July and September, Lonnie Lundstrom testified that the horse killing plants have closed throughout the United States so the horses essentially have no value now.

Debtor Delores Lundstrom testified that the horses are her pets and her life.

4

## II.  CONCLUSIONS OF LAW

The trustee seeks to have the Debtors denied a discharge under 11 U.S.C. § 727(a)(2) and (4).  Section 727(a) provides in relevant part:

(a) The court shall grant the debtor a discharge, unless—

\* \* \*

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

   (A) property of the debtor, within one year before the date of the filing of the petition; or

   (B) property of the estate, after the date of the filing of the petition;

\* \* \*

(4) the debtor knowingly and fraudulently, in or in connection with the case-

   (A) made a false oath or account[.]

11 U.S.C. § 727(a).

Denying a debtor a discharge is a harsh and drastic penalty.  Korte v. United States Internal Revenue Serv. (In re Korte), 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001); Kaler v. Huynh (In re Huynh), 392 B.R. 802, 809 (Bankr. D.N.D. 2008).  In light of the policy implications favoring debtors under the Bankruptcy Code, section 727 must be construed liberally in favor of the debtor and strictly against the objecting party, with the burden of proof thereunder resting squarely on the latter.  In re Huynh, 392 B.R. at 809-810. The standard of proof is a preponderance of the evidence.  Id. at 810.

    A.      Concealment of Assets

The trustee first argues Debtors should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2) because they concealed their horses with an intent to hinder, delay, or defraud. For the Court to deny Debtors a discharge, the trustee must prove:

> (1) that the act complained of was done within one year prior to the date of petition filing or at any time post-petition; (2) the act was that of the debtor; (3) it consisted of a transfer, removal, destruction or concealment of the debtor's property; and (4) it was done with an intent to hinder, delay or defraud either a creditor or an officer of the estate.

See In re Huynh, 392 B.R. at 810. Debtors did not list the horses in their bankruptcy petition. Although Debtors characterize the omission as an oversight, asset concealment exists where the interest of the debtor in property is not apparent but where actual or beneficial enjoyment of that property continued. See In re Korte, 262 B.R. at 472. The dispute in this case, therefore, primarily involves the last element, intent to defraud.

An intent to defraud can be established by circumstantial evidence or from inferences drawn from a debtor's course of conduct. First State Bank of Munich v. Braathen (In re Braathen), 364 B.R. 688, 697 (Bankr. D.N.D. 2006). Courts have considered several factors in determining whether a debtor acted with actual intent to hinder, delay or defraud: (1) lack or inadequacy of consideration; (2) family, friendship or other close relationship between the transferor and transferee; (3) retention of possession, benefit or use of the property in question; (4) financial condition of the transferor prior to and after the transaction; (5) conveyance of all of the debtor's property; (6) secrecy of the conveyance; (7) existence of trust or trust relationship; (8) existence or cumulative effect of pattern or series of transactions or course of conduct after the pendency or threat of suit; (9) instrument

6

affecting the transfer suspiciously states it is bona fide; (10) debtor makes voluntary gift to family member; and (11) general chronology of events and transactions under inquiry. Id.

In this case, Debtors did not list their horses in their original schedules, but amended their schedules just over a month later to disclose them. The Court is not convinced that the circumstantial evidence or inferences that can be drawn from Debtors' conduct prove Debtors acted with an intent to hinder, delay or defraud creditors or the trustee. Section 727(a)(2) therefore does not provide a basis for a denial of discharge.

B.   False Oath

The trustee also seeks a denial of Debtors' discharge under section 727(a)(4)(A). The trustee argues Debtors failed to disclose their horses on their schedules and to answer questions truthfully about the horses at the meeting of creditors.

A debtor may be denied a discharge under section 727(a)(4)(A) if the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account. 11 U.S.C. § 727(a)(4)(A). As section 727(a)(4)(A) makes clear, the Code requires nothing less than full and complete disclosure of any and all apparent interests of any kind. In re Korte, 262 B.R. at 474. A debtor's petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts. Id. Statements made in schedules are signed under penalties of perjury and have the force and effect of oaths, and testimony elicited at the first meeting of creditors is given under oath. Id.

For a false oath or account to bar a discharge, the false statement must be both material and made with intent. Id.. The threshold to materiality is fairly low. Id. The subject matter of a false oath is "material" and thus sufficient to bar discharge if it bears a relationship to the bankrupt's

7

business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property. Id. The Bankruptcy Appellate Panel has stated, however, that the omission of property of trivial value is immaterial. See Ellsworth v. Bauder (In re Bauder), 333 B.R. 828, 832 n.18 (B.A.P. 8th Cir. 2005) (omission of a ring valued at $300 was "borderline immaterial"). Lonnie Lundstrom testified that the horses essentially have no value, and his testimony was uncontradicted. The Court nevertheless concludes that the omission of the horses was material because it concerns the discovery of assets and the existence of property, see In re Korte, at 474, but bears in mind its marginal materiality.

Intent to deceive can be established by circumstantial evidence, and statements made with reckless indifference to the truth are regarded as intentionally false. Id. In Kaler v. Geller (In re Geller), 314 B.R. 800 (Bankr. D.N.D. 2004), the Court found that the debtors made numerous material false statements or omissions under oath that supported nondischargeability under section 727(a)(4)(A). The debtors made several fraudulently material omissions that they never cured. In re Geller, 314 B.R. at 807. They failed to disclose apartment furniture, a Sinatra print, a fax machine, the closure of a bank account, a $129,900 debt, and payments made to a creditor whose existence had not been disclosed. Id. They also made false statements under oath by providing false information to the trustee at the meeting of creditors. Id. The debtors claimed to merely have "perused" the schedules and statement of affairs because they relied on their attorney to completely and accurately prepare the documents. Id. The Court concluded that the debtors' failure to thoroughly read the schedules and statement of affairs, in conjunction with the numerous material omissions and inaccuracies, constituted reckless disregard for the truth. Id.

In the present case, it is undisputed that Debtors failed to list their horses in the schedules filed with their petition, but Debtors amended their schedules, as authorized by Bankruptcy Rule 1009(a), to disclose the horses two weeks after the meeting of creditors. The parties did not present any evidence as to the testimony about the horses at the meeting of creditors, but it is fair to assume that Debtors disclosed the horses in response to the omission coming to light at the meeting.[4] A debtor's subsequent disclosure of an asset does not absolve a debtor from an initial omission, but depending on the circumstances, it may be evidence of innocent intent. In re Bauder, 333 B.R. at 831. The Court further notes that Debtors disclosed the horses before the initiation of this adversary proceeding. Debtors should have carefully read their petition and schedules and recognized the omission of the horses, but, in contrast to the debtors in In re Geller, Debtors here omitted only one asset. Courts are often understanding of a single omission or error resulting from an innocent mistake. Kaler v. Huynh (In re Huynh), 392 B.R. 802, 813 (Bankr. D.N.D. 2008). As this Court remarked in Seablom v. Seablom (In re Seablom), 45 B.R. 445 (Bankr. D.N.D. 1984):

> It is possible, and it is oftentimes the case, that the statement . . . or schedules filed with the petition are incomplete for one reason or another without any intent on the part of the debtor for them to be so. It is not the purpose of section 727 to deny a discharge to a debtor merely because information is missing or inaccurate. The information must have been omitted or altered with the specific purpose of working a fraud.

In re Seablom, 45 B.R. at 449. The Court believes the omission of the horses was an oversight or mistake and was not made with the purpose of working a fraud. For all of these reasons, the Court

---

[4] At the hearing, counsel for both the trustee and Debtors referenced statements allegedly made by Debtor Lonnie Lundstrom about Debtors' horses at the meeting of creditors. However, neither party offered any testimony or other evidence about Debtors' testimony regarding the horses at the meeting of creditors. Argument by counsel is not evidence. See Wittenburg v. American Exp. Financial Advisors, Inc., 464 F.3d 831, 838 (8th Cir. 2006).

concludes that Debtors did not knowingly and fraudulently make a false oath in connection with this case, and section 727(a)(4)(A) does not provide a basis for a denial of discharge.

Based on the foregoing, the request of Michael L. Wagner, the bankruptcy trustee, for a denial of discharge under 11 U.S.C. § 727(a)(2) and/or (a)(4)(A) in the case of Debtors Lonnie L. Lundstrom and Delores J. Lundstrom is DENIED.

**SO ORDERED.**

Dated this January 28, 2009.

**WILLIAM A. HILL, JUDGE
U.S. BANKRUPTCY COURT**